UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANISHA PENDLETON,

Plaintiff,

v.

Case No. 2:25-cv-13945
District Judge Linda V. Parker
Magistrate Judge Kimberly G. Altman

DeANTHONY D. SHAW,
L.A.R.A., and T.L.A.R.A.
DISCIPLINARY
SUBCOMMITTEE,

Defendants.
_________________________________/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 14)**
**AND**
**DENY PLAINTIFF'S MOTIONS (ECF No. 4, 6) AS MOOT**[1]

I. Introduction

This is a civil rights case under 42 U.S.C. § 1983. Plaintiff Tanisha Pendleton, proceeding *pro se*, is suing Assistant Attorney General DeAnthony D. Shaw, the Michigan Department of Licensing and Regulatory Affairs Bureau of Professional Licensing (LARA), and the LARA Disciplinary Subcommittee

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

claiming that defendants' actions against her nursing licenses were without due process. (ECF No. 1). Full pretrial matters have been referred to the undersigned. (ECF No. 9).

Before the Court are three motions: Pendleton's "Motion for Stay of License Suspension and Statement of Irreparable Harm" (ECF No. 4) and "Motion for Protective Order and Request for Judicial Intervention Regarding Opposing Counsel's Conduct (ECF No. 6), and defendants' motion to dismiss (ECF No. 14). Pendleton has filed a response, a supplemental brief, and a surreply to defendants' motion (ECF Nos. 16, 18, 20) and defendants have filed a reply and a surresponse (ECF Nos. 19, 25). For the reasons discussed below, the undersigned RECOMMENDS that defendants' motion to dismiss (ECF No. 14) be GRANTED, and that Pendleton's motions be DENIED AS MOOT. If this recommendation is adopted, the case will be closed.

## II. Background

The following facts are gleaned from the complaint. (ECF No. 1).

Pendleton is a registered nurse and licensed practical nurse in Michigan after graduating from Siena College of Health in Florida, which "was fully approved at the time of [her] graduation," in June 2020. (*Id.*, PageID.5). Since 2021, she worked in a level 1 trauma hospital without issue or complaint. (*Id.*). On May 30, 2023, LARA suspended her nursing licensed "based on claims [her] education was

insufficient." (*Id.*). However, her official Siena transcript has since been submitted to LARA—it was not previously available—confirming that she met all graduation and licensure requirements. (*Id.*).

Assistant Attorney General Shaw "opposed [her] evidence and supported the claims against [her] at the administrative hearing." (*Id.*). Administrative Law Judge Raman Buttar "did not allow [her] full evidence, accepted mistaken or incomplete testimony, and recommended [her] license suspension."[2] (*Id.*). The LARA Disciplinary Subcommittee then adopted the recommendation to revoke her license. (*Id.*). The license suspension caused Pendleton to lose her employment and income. (*Id.*). She asserts claims under the due process and equal protection clauses of the Fourteenth Amendment. (*Id.*, PageID.4). Pendleton requests that the Court order her nursing license to be fully reinstated and for her record to be expunged and cleared from all disciplinary or reporting boards, for compensation for lost income, and any additional monetary compensation the Court deems just and necessary. (*Id.*, PageID.6).

## III. Legal Standards

### A. Rule 12(b)(1)

"Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d. 752, 759 (6th Cir.

[2] ALJ Buttar is not named as a defendant.

2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* "On the other hand, when a court reviews a complaint under a *factual* attack…no presumptive truthfulness applies to the factual allegations." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright*, 751 F.3d. at 759. "Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.*

B. Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582

(6th Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him…. [N]either may the Court 'conjure up unpled allegations.'" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (citations omitted).

"In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency." *Haire v. Farm & Fleet of Rice Lake, Inc.*, No. 21-CV-10967, 2022 WL 128815, at *6 (E.D. Mich. Jan. 12, 2022) (citations omitted). "[A] court may take judicial notice of 'other court proceedings' without converting a motion to dismiss into a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Mifsud v. Uber Techs., Inc*., 203 F. Supp. 3d 820, 823 (E.D. Mich. 2016)).

## IV. Defendants' Motion to Dismiss

Defendants argue that Pendleton's claims should be dismissed because 1) the Court lacks subject matter jurisdiction as Pendleton failed to allege a colorable federal question; 2) the claims are barred by the Eleventh Amendment; and 3) Pendleton has failed to state a claim under either the Due Process or Equal Protection Clause. (ECF No. 14, PageID.197).

A. Subject Matter Jurisdiction

Defendants argue that Pendleton's complaint should be dismissed for lack of subject matter jurisdiction because she fails to allege a colorable federal question. (ECF No. 14, PageID.209). Specifically, they argue that Pendleton disagrees with the sanctions resulting from the disciplinary proceedings against her State of Michigan nursing licenses, and that this complaint is "an administrative appeal thinly disguised as a federal civil action, following Pendleton's unsuccessful attempts to obtain appellate relief in state courts." (*Id.*).

As will be discussed below, the complaint is subject to dismissal based on immunity and fails to state a claim under either the Due Process or Equal Protection Clause. Therefore, the undersigned need not determine whether the complaint could be dismissed for lack of subject matter jurisdiction.

B. Eleventh Amendment

The Eleventh Amendment applies to suits brought against a state by one of its own citizens, *Ex Parte Young*, 209 U.S. 123 (1908), barring "§ 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009). The State of Michigan has not consented to civil rights suits in federal court. *Abick v. State of Mich.*, 803 F.2d 874, 877 (6th Cir. 1986). A lawsuit against individuals in their official capacities for money damages is considered a suit against the State and

allows defendants to invoke sovereign immunity under the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994). However, despite the sovereign immunity afforded by the Eleventh Amendment, "federal courts [may] enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014). "[T]he Eleventh Amendment does not preclude a suit against [state officers] for prospective injunctive relief." *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)); *see also Ex Parte Young*, 209 U.S. at 129.

In her complaint, Pendleton claims that the disciplinary proceedings instigated by LARA and the Disciplinary Subcommittee violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment. She asks for relief in the form of monetary compensation and the reinstatement of her nursing license. Although she argues that the Eleventh Amendment does not bar prospective injunctive relief, the crux of her claims is that her rights were violated during the administrative hearing process, which does not fall under the *Ex Parte Young* exception. LARA and the Disciplinary Subcommittee,[3] as arms of the State of Michigan, are entitled to immunity on all of Pendleton's claims. *Proctor v. Bd.*

---

[3] Defendants explain in their motion that the Disciplinary Subcommittee is an arm of the Michigan Board of Nursing. (ECF No. 14, PageID.205).

*of Med.*, 718 F. App'x 325, 327 (6th Cir. 2017) ("The only defendants named in Proctor[']s complaint, the [Department of Licensing and Regulatory Affairs] and the Boards, are clearly agencies or departments of the State of Michigan."); *Williams v. Michigan Bd. of Dentistry*, 39 F. App'x 147, 148 (6th Cir. 2002) (affirming the district court's dismissal of the Michigan Board of Dentistry, the Michigan Department of Public Health, and the Michigan Department of Licensing and Regulation because they are entitled to sovereign immunity).

Further, a claim against a state official in their official capacity amounts to a suit against the State. *See, e.g., Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation modified)). Pendleton does not clarify whether she intended to sue Shaw in his official or individual capacity, but insofar as she asserts a claim against him in his official capacity, he is entitled to immunity. Overall, as defendants are entitled to immunity, Pendleton's claims against them should be dismissed.

### C. Failure to State a Claim

#### 1. Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty, or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). Procedural due process "requires that the government's

deprivation of life, liberty, or property, even if consistent with substantive due process, be implemented in a fair manner." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *U.S. v. Salerno*, 481 U.S. 739, 746 (1987)). To show a violation of a procedural protection, the plaintiff "must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221. Procedural due process is therefore examined in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Defendants argue that Pendleton's allegations fail to state a due process claim because Pendleton was afforded an administrative hearing and the opportunity to appeal the decision to the proper court and her allegations do not contain enough facts for the Court to draw the reasonable inference that defendants are liable for the misconduct alleged. (ECF No. 14, PageID.214) (quoting *Iqbal*, 556 U.S. at 678). The undersigned agrees.

In her complaint, Pendleton alleges that defendants relied on expert testimony that included "mischaracterizations and exclusion of key evidence" which denied her a fair hearing, and that the Disciplinary Subcommittee "failed to satisfy procedural requirements for impartial and comprehensive adjudication."

(ECF No. 1, PageID.13). She also later says that an unauthorized third party observed the administrative hearing. These allegations are entirely conclusory and provide no factual background on which the Court could infer a violation of her procedural due process rights. As defendants explain in their motion, LARA filed an administrative complaint and order of summary suspension against Pendleton on May 30, 2023 (ECF No. 14-1, PageID.225), after which a summary suspension hearing was held on June 26, 2023. (ECF No. 1, PageID.44). At the suspension hearing, an administrative law judge (ALJ) ordered the dissolution of the summary suspension and reinstatement of Pendleton's licenses. (*Id.*, PageID.45). A hearing was then held and the ALJ issued a proposal for decision finding that Pendleton violated Michigan's Public Health Code. (*Id.*, PageID.20-43). On February 7, 2024, the Disciplinary Subcommittee adopted the ALJ's proposal. (*Id.*, PageID.47-53). Pendleton then filed a claim of appeal in the Wayne County Circuit Court, which was dismissed for lack of subject matter jurisdiction. (ECF No. 14-1, PageID.231). She then filed an application for leave to appeal to the Michigan Court of Appeals, which was denied. (ECF No. 1, PageID.131). Finally, she filed an application for delayed leave to appeal with the Michigan Supreme Court, which was denied as untimely. (*Id.*, PageID.132).

Aside from her conclusory allegations related to expert witnesses and the evidence admitted in the hearing, Pendleton has not explained how defendants'

conduct or the multiple levels of review violated her procedural due process rights.[4] As such, her procedural due process claim fails to state a viable claim for relief.

2. Equal Protection

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Pendleton must plead that "the government treated [her] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

Defendants argue that Pendleton has failed to articulate how she was treated differently than similarly situated individuals aside from saying that her discipline was selective because others with comparable allegations were unpunished, which is insufficient. (ECF No. 14, PageID.217). The undersigned agrees. Aside from

[4] Pendleton appears to argue that because the Ohio Board of Nursing allowed her to reapply for her license, Michigan was bound by the Full Faith and Credit Clause to come to the same conclusion. This argument is flawed for a multitude of reasons, one of which being that the Full Faith and Credit Clause applies only to matters involving the same parties. *See Durfee v. Duke*, 375 U.S. 106, 115 (1963).

one conclusory sentence claiming that she was treated differently than others, Pendleton has not provided any additional information to indicate how she was treated differently and on what basis. Without additional allegations describing any sort of disparate treatment, her claim is not plausible. Thus, her Equal Protection Clause claims should be dismissed against all defendants.

V. Pendleton's Motions (ECF Nos. 4, 6)

Pendleton has filed two motions, titled "Motion for Stay of License Suspension and Statement of Irreparable Harm" and "Motion for Protective Order and Request for Judicial Intervention Regarding Opposing Counsel's Conduct." (ECF Nos. 4, 6). In the first motion, Pendleton asks for an order staying any suspension or revocation of her nursing license pending resolution of this case. (ECF No. 4, PageID.143). In her second motion, she asks that the Court "take appropriate action to address opposing counsel's conduct, including issuing a protective order to prohibit defamatory or unsupported statements and to enforce proper courtroom decorum, thereby ensuring a fair process moving forward." (ECF No. 6, PageID.147). She explains that during the administrative hearing, Shaw "created a prejudicial and hostile environment that compromised her right to a fair administrative hearing." (*Id.*). Defendants responded only to Pendleton's first motion in their motion to dismiss, arguing that she is not entitled to a preliminary injunction because Pendleton cannot show a likelihood of success on

the merits, nor can she show she will suffer irreparable harm, that the balance of harms weigh in her favor, or that the public interest would be served. (ECF No. 14, PageID.218). Putting aside whether the relief she seeks in either motion is available, because the undersigned has recommended that the complaint be dismissed in its entirety, these motions should be denied as moot.

## VI. Conclusion

For the reasons discussed above, the undersigned RECOMMENDS that defendants' motion to dismiss (ECF No. 14) be GRANTED and that Pendelton's motions (ECF Nos. 4, 6) be DENIED AS MOOT. If this recommendation is adopted, the case will be closed.

SO ORDERED.

Dated: August 7, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 7, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager